UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOUIS KERLINSKY,<br><br>            Plaintiff,<br><br>   v.<br><br>MAIN LINE HOSPITALS, INC.,<br><br>            Defendant. | CIVIL ACTION<br><br>No. 10-04404 |

**MEMORANDUM & ORDER**

On August 30, 2010, Louis Kerlinsky filed a pro se diversity complaint against Main Line Hospitals, Inc. (d/b/a "Lankenau Hospital") alleging that Lankenau "failed to treat plaintiff properly and in accordance with good medical practice as it impliedly agreed to do" while he was treated there in 2006. Compl. ¶ 60. Presently before the court are (1) Kerlinsky's "Motion to Default the Defendant," and (2) Lankenau's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court will deny Kerlinsky's default motion, and grant Lankenau's motion to dismiss.

1

I.  **BACKGROUND**[1]

Sometime in 2006, Kerlinsky received a prescription from the U.S. Veteran's Administration for the drug Terazosin because of "high blood pressure and an enlarged prostate gland." Compl. ¶ 8. On September 1, 2006, Kerlinsky took his first dose of Terazosin at about 5:00 p.m. Compl. ¶ 7. Shortly thereafter, at around 7:00 p.m., Kerlinsky's "heart stopped beating, he stopped breathing and he was taken by ambulance to Lankenau Hospital." Compl. ¶ 4. Kerlinsky was treated at Lankenau from September 1, 2006, to September 5, 2006; while there, he was diagnosed with "syncope and collapse." Compl. ¶¶ 4, 5. When Kerlinsky was discharged on September 5, 2006, he was given "instructions to have a pacemaker imbedded in his chest . . . for his heart condition." Compl. ¶ 5. On September 5, 2006, Kerlinsky entered Baystate Medical Center, where he was "found to have a good heart which needed no pacemaker or treatment." Compl. ¶¶ 10, 11.

Kerlinsky claims that Lankenau (1) treated him negligently,[2] and (2) breached an

---

[1] The facts alleged in the complaint are taken as true and all reasonable inferences are drawn in favor of Kerlinsky. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

[2] It is not completely clear whether Kerlinsky is alleging negligence on the part of Lankenau because this claim is crossed out in the complaint, Compl. 5; however, the court construes the complaint to include a claim for negligence because, in his brief in opposition to the motion to dismiss, Kerlinsky asserts: "Plaintiff did not aver he learned of the alleged negligence on September 8, 2006. . . . The Pennsylvania[] two-year statute of limitations did not run on Plaintiff's claim[]." Docket No. 10, at 5 (emphasis in original). (Although Lankenau has raised the statute of limitations as an affirmative defense, the complaint will be dismissed on other grounds as discussed *infra*).

implied contract by giving him an incorrect diagnosis.

## II.   DISCUSSION

Motion for Default

Kerlinsky contends in his Motion to Default the Defendant—and Lankenau does not dispute—that Lankenau was served with the summons and complaint on September 8, 2010.  Docket No. 7 at 1.  Thus, under Rule 12(a)(1)(A)(i), Lankenau had until September 29, 2010, to file its response.  But Lankenau did not file its motion to dismiss until October 6, 2010.  On October 12, 2010, Kerlinsky filed a Motion to Default the Defendant.

Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."[3]  An entry of default is an administrative formality because "a defendant who fails to answer within the time specified by the rules is in default even if that fact is not officially noted."  10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2692 (3d ed. 1998).  The court will construe Lankenau's answer in response to Kerlinsky's motion as a motion under 55(c) to have the default excused.

---

[3] The court has the authority to order the clerk to enter default.  *Sys. Indus., Inc. v. Han*, 105 F.R.D. 72, 74 n.1 (E.D. Pa. 1985), *abrogated on other grounds by Sys. Indus., Inc. v. Han*, No. 84-5457, 1986 WL 10551, at *1 (E.D. Pa. Sept. 15, 1986); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (3d ed. 1998).

3

Default may be set aside "for good cause." Fed. R. Civ. P. 55(c). A district court may use its discretion when determining whether to set aside an entry of default, and in doing so it must consider: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984) (holding that defaults and default judgments are not favored and that cases should be decided on their merits whenever practicable).

First, Kerlinsky has not been prejudiced by Lankenau's delay because he has not been impeded in pursuing his claim. *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984); *see also Century 21 Real Estate LLC v. Kenneth M. Yanni, Inc.*, No. 07-6078, 2009 WL 904122, at *2–3 (D.N.J. Mar. 31, 2009) (holding that the mere passage of time does not itself establish prejudice). Second, Lankenau presents a potentially meritorious defense because it argues that Kerlinsky's negligence claim is barred by the statute of limitations. Mot. to Dismiss ¶¶ 18–19. That defense, if "proven at trial, would constitute a complete defense" to Kerlinsky's allegations. *$55,518.05 in U.S. Currency*, 728 F.2d at 197 (internal quotation marks and citation omitted). Third, Kerlinsky has made no allegation that Lankenau's late response was a result of "willful or bad faith conduct or deliberate trial strategy." *Dambach v. United States*, 211 F. App'x 105, 110 (3d Cir. 2006). Accordingly, since "good cause" would exist to set aside a default, the court will deny Kerlinsky's Motion to Default the Defendant.

Motion to Dismiss

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus plaintiffs must include "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing a 12(b)(6) motion, "the facts alleged [in the complaint] must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Reasonable inferences must be drawn in favor of the plaintiff. *Id.*

Kerlinsky first alleges that Lankenau acted negligently while he was under its care. Compl. ¶¶ 55–57. Under Pennsylvania law, a hospital may be liable for negligence under a theory of corporate negligence "if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." *Thompson v. Nason Hosp.*, 591 A.2d 703, 707 (Pa. 1991). Thus, to successfully maintain a negligence suit against a hospital, "it is necessary to show that the hospital had actual or constructive knowledge of the defect or procedures which created the harm." *Id.* at 708.

5

Further, "the hospital's negligence must have been a substantial factor in bringing about the harm to the injured party." *Id.*; *see also Welsh v. Bulger*, 698 A.2d 581, 585 (Pa. 1997) ("A cause of action for corporate negligence arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees." (citations omitted)).

In support of his negligence claim against Lankenau, Kerlinsky alleges that "Lankenau Hospital negligently diagnosed and treated plaintiff and prescribed a pacemaker for plaintiff when he needed no pacemaker." Compl. ¶ 55. He does not make further allegations in support of his claim, let alone any allegations about Lankenau's policies, actions, or omissions. Thus, Kerlinsky has failed to allege the elements of corporate negligence, and the court will dismiss the negligence claim against Lankenau.

Next, Kerlinsky alleges that Lankenau breached an implied contract to treat him "in accordance with good medical practice." Compl. ¶ 60. Under Pennsylvania law, a court may recognize the breach of an implied contract when a physician fails to "employ reasonable skill, judgment, and diligence in caring for the patient." *Murphy v. Aesthetic & Reconstructive Surgery*, 2 Pa. D. & C. 4th 273, 276 (Ct. C.P. Erie Cnty. 1989); *see also Pringle v. Rapaport*, 980 A.2d 159, 167 (Pa. Super. Ct. 2009). However, "where an implied contract claim duplicates the negligence claim in a medical-malpractice case, the court must strike the contract action." *Murphy*, 2 Pa. D. & C. 4th at 276–77; *see also Abraham v. Digugleilmo*, No. 06-0058, 2010 WL 2136600, at *11 (E.D. Pa. May 25,

2010) (applying Pennsylvania law); *Peterman v. Geisinger Med. Ctr.*, 8 Pa. D. & C. 3d 432, 437 (Ct. C.P. Montour Cnty. 1978) ("[T]he contract claims are redundant and, as such, should be dismissed. The gravamen of plaintiffs' action is in tort . . . ."). Kerlinsky's breach of contract claim is essentially the same as his negligence claim: both are premised on the same insufficient allegations, and hence both fail.

*  *  *  *

**AND NOW**, this  8  day of August 2011, it is hereby **ORDERED** as follows:

(1) the plaintiff's Motion to Default the Defendant, Docket No. 7, is **DENIED**;

(2) the defendant's motion to dismiss, Docket No. 6, is **GRANTED**;

(3) the plaintiff's complaint is **DISMISSED**.


BY THE COURT:

/s/ Louis H. Pollak
Pollak, J.